744 So.2d 1165 (1999)
Linda BELL, Appellant,
v.
PROGRESSIVE SPECIALTY INSURANCE COMPANY and Progressive Bayside Insurance Company, Appellees.
No. 98-3469.
District Court of Appeal of Florida, First District.
November 1, 1999.
Charles W. Dodson of Charles W. Dodson, P.A., Tallahassee, for Appellant.
Harold R. Mardenborough, Jr. and Charles A. Stampelos of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, for Appellee Progressive Bayside Insurance Company.
PADOVANO, J.
At issue in this appeal is the effectiveness of a written waiver of uninsured motorist coverage. We conclude that the waiver applies not only to the original insurance policy for which it was executed, but also to a replacement policy issued on the same terms by a different insurance company. Therefore, we affirm the trial court's summary judgment for the insurance company.
The plaintiff, Linda Bell, purchased an automobile insurance policy from Progressive Specialty Insurance Company on August 1, 1990. At the time the policy was issued, Ms. Bell was advised of her right to obtain uninsured motorist coverage up to the bodily injury liability limits of her policy. She acknowledged this right, but signed a written waiver form indicating that she wished to reject uninsured motorist coverage.
Progressive Specialty wrote to Ms. Bell on June 10, 1992, to inform her that it would no longer be offering the coverage provided by her policy. Enclosed with the letter was an offer to purchase identical coverage from Progressive Bayside Insurance Company. Progressive Bayside and Progressive Specialty are each subsidiaries of a company known as the Progressive Group. Ms. Bell signed the necessary forms and her insurance policy was transferred *1166 to Progressive Bayside without any lapse in coverage. Bayside did not obtain a new waiver of uninsured motorist coverage when the policy was transferred.
Ms. Bell was injured on February 13, 1997, in a motor vehicle accident with an uninsured motorist. She then filed a complaint for damages against Bayside, claiming that she was entitled to uninsured motorist coverage by operation of law. The general theory of the complaint was that Progressive Bayside was obligated to provide uninsured motorist coverage because it had not obtained a rejection form as required by statute.
Bayside defended on the ground that it was entitled to rely on the rejection form Ms. Bell had previously submitted to Progressive Specialty. The argument in support of this defense was that a formal rejection of uninsured motorist coverage applies not only to the original insurance policy but also to any other policy that replaces the original on the same terms. The trial court agreed and rendered a final summary judgment for Bayside.
Here, as in the trial court, Ms. Bell contends that Bayside was obligated to obtain a new rejection of uninsured motorist coverage when the policy was transferred. In support of this contention, she argues that the original rejection form was a condition of her contract with Progressive Specialty and that it did not become a part of her subsequent agreement with Bayside. The fallacy of this argument, however, is that it incorrectly assumes that the duty to offer uninsured motorist coverage arises from the contractual relationship between the insurance company and its insured. To the contrary, this duty is one that is created entirely by statute.
Section 627.727(1), Florida Statutes requires an insurance company to offer uninsured motorist coverage with every policy that provides bodily injury liability coverage. The named insured can reject the right to purchase uninsured motorist coverage, but the rejection must be in writing. If the insurance company fails to obtain a written rejection, the insured is entitled to uninsured motorist coverage up to the limit of the bodily injury liability coverage provided by the policy. See Lumbermen's Mut. Cas. Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978).
Additionally, section 627.727(1) defines the applicability of a written rejection of uninsured motorist coverage. The version of the statute in effect at the time the Bayside policy was issued provides in material part:
Unless an insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured or lessee had rejected the coverage. (emphasis supplied).
§ 627.727(1), Fla. Stat. (1991). Because the policy Ms. Bell purchased from Bayside replaced the policy previously issued by Progressive Speciality at the same bodily injury liability limits, Bayside was entitled to rely on Ms. Bell's previous written rejection of uninsured motorist coverage.
This conclusion depends in part on the fact that the transfer of the policy did not result in a lapse of coverage. A new rejection form would have been required if the original insurance policy had expired and if Ms. Bell had then purchased identical coverage with another company. Under these circumstances, the new insurance policy could not be characterized as a replacement policy. See National American Ins. Co. v. Baxley, 578 So.2d 441 (Fla. 1st DCA 1991). In the present case, however, the bodily injury liability coverage existed continuously from the time Ms. Bell submitted her written rejection of uninsured motorist coverage. The policy was transferred from one of the Progressive Group's *1167 subsidiaries to another, but everything else remained the same.
For these reasons, we conclude that Bayside was not obligated to obtain a new rejection of uninsured motorist coverage. Because Ms. Bell did not acquire uninsured motorist coverage, the trial court properly rejected her claim.
Affirmed.
ALLEN and BROWNING, JJ., CONCUR.